IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 15-187-3 |
| v. | : | |
| | : | CIVIL ACTION |
| BASIL BUIE | : | NO. 16-6274 |

MEMORANDUM

Bartle, J.                                                          May 31, 2017

Before the court is the pro se petition of Basil Buie to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

On October 7, 2015, one day after the trial of Buie and his co-conspirator Salahudin Shaheed began, Buie pleaded guilty to: (1) conspiracy to commit robbery which interferes with interstate commerce in violation of 18 U.S.C. § 1951; (2) attempted robbery which interferes with interstate commerce in violation of 18 U.S.C. §§ 1951 and 2; and (3) kidnapping in violation of 18 U.S.C. §§ 1201 and 2.

In January 2016, he was sentenced to 180 months of imprisonment on each count with the sentences to run concurrently. This sentence fell within the United States Sentencing Guideline range of 168 to 210 months. Buie did not file an appeal.

I.

At the change of plea hearing, Buie admitted that the following facts accurately summarize this case. In November 2014, Shaheed began planning to rob the National Watch and Diamond Exchange store in Philadelphia, Pennsylvania. Buie, who is Shaheed's cousin, agreed to participate in the robbery along with Khayree Gay.

In March 2015, Buie and his co-conspirators made several trips to the parking garage located directly across from National Watch in order to conduct surveillance. On those occasions, they observed the employees of National Watch to determine which would be most likely to have knowledge of the codes to the alarm and safe. They planned to return to that location so that Buie and Gay could confront, assault, and restrain a store employee in their van in the parking garage while Shaheed robbed the store.

On April 4, 2015, Buie and his co-conspirators put their plan into action. They drove a van to the parking garage and waited for National Watch to close for the day. After some time, the store employee for whom they had been waiting left National Watch and entered the parking garage. All three men jumped out of the van to ambush her. Shaheed shot her with a Taser and all three men violently forced her into the back of the van.

Shaheed then drove the van to the top level of the parking garage while Gay bound her hands and legs with zip ties. Shaheed parked the car, and the co-conspirators demanded that the victim provide the alarm and safe codes for National Watch. The victim was unable to provide this information. Shaheed became enraged and punched and kicked the victim in her face and all over her body. He told her that he was going to kill her.

Shaheed then drove the van onto Interstate 95 South, while Buie held the victim down in the back of the van using his body weight. Buie sat on the victim for hours while her hands were restrained and her legs were bound at the ankle, causing her to suffer extreme pain.

During this time, they drove the victim to a gas station. There, they used her First Trust Bank ATM card to purchase $40 in gasoline for the van.

After refueling, they drove to the Mount Lawn Cemetery in Darby, Pennsylvania where they dumped the victim into a ditch. Her wrists and ankles were still bound with zip ties. While Buie, Shaheed, and Gay were attempting to exit the cemetery, the van became stuck in the mud. They put the van into reverse and returned to the place where they had dumped the victim. Buie and his co-conspirators threw her back into the van and placed metal handcuffs onto her wrists and shackles onto her ankles. Buie and his co-conspirators again beat and

tortured her. They then dumped her in the cemetery for a second time, covered her with a sheet, and left.

A few hours later, Buie used the victim's ATM card on Chester Avenue in Philadelphia to make three $200 cash withdrawals totaling $600.

Although the victim survived this harrowing experience, she suffered severe and permanent physical and psychological injuries.

II.

Buie alleges in his § 2255 motion that his constitutional right to the effective assistance of counsel was violated. He maintains that counsel was ineffective in failing to: (1) assert that the court and Government lacked "legislative jurisdiction over the exact geographical location where the alleged criminal activity given in the indictment took place"; (2) challenge the subject matter jurisdiction of the court; (3) contest the validity of the superseding indictment; and (4) notify the court of certain mitigating factors at sentencing. He makes no claim of innocence.

The Sixth Amendment to the U.S. Constitution guarantees the right of criminal defendants to effective assistance of counsel. See U.S. Const. amend. VI; <u>Strickland v. Washington</u>, 466 U.S. 668, 685-86 (1984). In seeking relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that
> counsel's performance was deficient. This
> requires showing that counsel made errors so
> serious that counsel was not functioning as
> the "counsel" guaranteed the defendant by
> the Sixth Amendment. Second, the defendant
> must show that the deficient performance
> prejudiced the defense. This requires
> showing that counsel's errors were so
> serious as to deprive the defendant of a
> fair trial, a trial whose result is
> reliable. Unless a defendant makes both
> showings, it cannot be said that the
> conviction . . . resulted from a breakdown
> in the adversary process that renders the
> result unreliable.

Strickland, 466 U.S. at 687; see also United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007).

"Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. In evaluating a claim that counsel was ineffective, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

### III.

We begin with Buie's assertion that counsel was ineffective for failing to file a pretrial motion challenging the "legislative jurisdiction" of the court and the Government.

-5-

He contends that this jurisdiction is lacking because the jewelry store at issue in this case was not a "fort, magazine, arsenal, dockyard, 'needful building', or other federal enclave within the COMMONWEALTH OF PENNSYLVANIA Republic, and nor was Buie or his private property located and/or situated within any of the aforementioned federal areas." He contends that the conduct at issue falls within the police power of the state rather than the province of the United States Government.

This argument is wholly without merit. Buie was convicted of three federal offenses prohibited by federal statute: (1) conspiracy to commit robbery which interferes with interstate commerce in violation of 18 U.S.C. § 1951; (2) attempted robbery which interferes with interstate commerce in violation of 18 U.S.C. §§ 1951 and 2; and (3) kidnapping in violation of 18 U.S.C. §§ 1201 and 2. These laws were enacted by the United States Congress pursuant to its constitutional authority to regulate interstate commerce. See U.S. Const. art. I, § 8. Congress established this and other district courts for the purpose of adjudicating disputes concerning the laws of the United States, including the federal statutes which Buie was convicted of violating. See 28 U.S.C. § 118.

Buie also claims that counsel erred in failing to assert that this court lacked subject matter jurisdiction over the kidnapping offense in violation of 18 U.S.C. § 1201. He

-6-

claims that there was no evidence that he and his co-coconspirators transported the victim across state lines. Once again, Buie's assertion is meritless. This court has original subject matter jurisdiction over all violations of federal law, including his kidnapping conviction. See 18 U.S.C. § 3231. Section 1201 provides:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when--
>
> > (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail <u>or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense</u>;
>
> . . .
>
> shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

See § 1201(a) (emphasis added).

The victim's First Trust Bank ATM card was a means, facility, or instrumentality of interstate commerce, which Buie and his co-conspirators used "in committing or in furtherance of the commission of the offense." See id. Buie and his

-7-

co-conspirators purchased $40 worth of gasoline to refuel their van with the victim's stolen ATM card.  They then used that fuel to drive the victim to the cemetery, where they beat and tortured her, demanded the alarm and safe codes, and left her in a ditch under a sheet.

Next, Buie argues that his counsel was ineffective for failing to contest the validity of the superseding indictment, which he claims was not signed by the grand jury foreperson or the United States Attorney.  This argument is again without merit.  We acknowledge that the copy of the superseding indictment that was filed on the public docket does not contain the foreperson's signature.  Although "[i]t is true that the Federal Rules of Criminal Procedure state that indictments are to be signed by both the foreperson of the grand jury and by an attorney for the government," our Court of Appeals and the Supreme Court have stated that the "foreman's duty to sign the indictment is a formality, for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment."  See United States v. Willaman, 437 F.3d 354, 360 (3d Cir. 2006) (quoting Hobby v. United States, 468 U.S. 339, 345 (1984)) (citing Fed. R. Crim. P. 6(c), 7(c)(1)).  Moreover, the Government has submitted under seal a copy of the signed superseding indictment to the court.  We have reviewed this document and determined that it includes

the signatures of the grand jury foreperson as well as the Deputy Criminal Chief as the designee of the United States Attorney.

Lastly, Buie contends that counsel was ineffective at sentencing because counsel did not make the court aware of mitigating circumstances concerning his role in the offense. In particular, he claims that defense counsel failed to inform the court that he convinced Shaheed and Gay not to kill the victim and to let her go instead. Buie also states that counsel should have made the court aware that he comforted the victim while he was restraining her with his body weight in the back of the van.[1]

At the sentencing hearing, Buie informed the court of this mitigating conduct. He claimed that he laid on the top of the victim in the van to protect her from being beaten by Shaheed and Gay. He advised the court that he told her that everything would be okay and that he was not going to allow the others to kill her. The court took these statements into account in fashioning a sentence, which was within the

---

1. Buie also claims to have "singlehandedly convinced his co-defendants to plead guilty to the charged offenses." This is not true. Gay pleaded guilty in August 2015, two months before Buie entered a guilty plea.

Guidelines range.  Buie's position that counsel was ineffective in this regard is totally without merit.[2]

For the reasons stated above, Buie did not suffer prejudice as a result of counsel's failure to raise these baseless arguments.  Accordingly, the motion of petitioner Basil Buie to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 will be denied.

---

2.  We note that throughout his petition, Buie contends that defense counsel failed to raise these meritless arguments because counsel "was in such a rush to get him to plead guilty." To the contrary, the superseding indictment was entered against Buie in July 2015, and Buie did not plead guilty until October 2015, on the second day of trial.